UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

KENRIC LEVER,

                              Plaintiff,                  **MEMORANDUM & ORDER**
                                                                                        16-CV-5130 (MKB) (SJB)

        v.

CHRISTINA LYONS and LESCELE BOGLE,

                              Defendants.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Kenric Lever, proceeding *pro se*, commenced the above-captioned action on September 15, 2016, against *pro se* Defendants Christina Lyons and Lescele Bogle, asserting claims of malicious prosecution, "libel/slander defamation," and "mental anguish." (Compl., Docket Entry No. 1.) On August 9, 2017, Defendants filed separate, but largely identical, motions to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Def. Bogle Mot. to Dismiss ("Bogle Mot."), Docket Entry No. 26; Def. Lyons Mot. to Dismiss ("Lyons Mot."), Docket Entry No. 27.) Defendants also requested that the Court impose sanctions against Plaintiff for filing this action. (Bogle Mot.; Lyons Mot.) On August 25, 2017, the Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation, (*see* Order dated Aug. 25, 2017), and the case was reassigned to Magistrate Judge Sanket J. Bulsara, (*see* Order dated Sept. 5, 2017). By report and recommendation dated January 2, 2018 (the "R&R"), Judge Bulsara recommended that the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction, and that Defendants' requests for

sanctions be denied. (R&R 21, Docket Entry No. 37.) Plaintiff objected to the portion of the R&R recommending dismissal of the Complaint. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 39.) For the reasons set forth below, the Court adopts the R&R in its entirety, dismisses the Complaint without prejudice for lack of subject matter jurisdiction, and denies Defendants' requests for sanctions.

I. Background

    a. Factual background

The Court assumes the truth of the allegations in the Complaint for the purpose of deciding Defendants' motions. Plaintiff's claims arise from various alleged incidents that took place between 2013 and 2016. During these incidents, Lyons — with whom Plaintiff shares a daughter — allegedly presented false evidence and made false accusations regarding Plaintiff in the course of state court proceedings, on social media websites, and to law enforcement. (Compl. ¶¶ 1–11.)

On or about July 27, 2013, Lyons and Bogle allegedly "acted in cohesion" to create a falsified image of Lyons with bruises on her body, intending to falsely accuse Plaintiff of physically harming her.[1] (*Id.* ¶ 7.) According to Plaintiff, these images were introduced into evidence during a trial in New York state family court. (*Id.*) The Complaint states that the action was ultimately dismissed, but does not include any other details about the proceedings. (*Id.*)

Plaintiff alleges that on September 8, 2015, Lyons made a false report to the Newark, New Jersey Police Department, alleging that Plaintiff published false information about her on social media websites and threatened to harm her. (*Id.* ¶ 4.) The same day, Lyons obtained an

---

[1] As Judge Bulsara noted in the R&R, this allegation forms "the sole basis" of the claims against Bogle. (R&R 2 n.3, Docket Entry No. 37.)

2

order of protection against Plaintiff based on similar false accusations, which prevented Plaintiff from acquiring a handgun license in order to obtain a job as a collection agent with the New York City Transit Authority. (*Id.* ¶ 9.) Plaintiff alleges that, in total, Lyons obtained four orders of protection against him based on false accusations. (*Id.* ¶ 10.)

On September 14, 2015, Plaintiff was tried in New Jersey state court for "[t]erroristic [t]hreats" arising from the complaints Lyons made to the Newark Police Department. (*Id.* ¶¶ 4–5.) Plaintiff alleges that during the proceedings, Lyons used the falsified image she and Bogle created and also gave untruthful testimony while she was cross-examined. (*Id.* ¶ 5.) Plaintiff was found not guilty. (*Id.*)

On July 17, 2016, when Lyons met Plaintiff at the 78th Precinct in Brooklyn, New York to turn over custody of their daughter, Lyons falsely told police officers that Plaintiff had sexually abused their daughter, and showed them images of child pornography, which she claimed came from Plaintiff's computer. (*Id.* ¶ 1.) Plaintiff was detained for questioning for several hours, during which time Lyons left the precinct with their daughter without turning custody over to Plaintiff. (*Id.*)

On July 28, 2016, during proceedings in New Jersey state court, Lyons falsely stated that Plaintiff was under state and federal investigation related to possession of child pornography. (*Id.* ¶ 2.) As a result, the judge suspended Plaintiff's custody and visitation rights with his daughter. (*Id.* ¶ 3.) On August 31, 2016, the court determined that Lyons' allegations were fabricated. (*Id.*)

Plaintiff alleges that Lyons also falsely accused him of physically harming her in other New Jersey state court proceedings that took place in or around September of 2015, (*id.* ¶ 8), and on social media websites, (*id.* ¶ 11).

3

Plaintiff seeks $150,000 in damages from Lyons and $25,000 in damages from Bogle, as well as punitive damages in an amount "the [C]ourt deems justif[ied]." (*Id.* at 6.)

   b. **Procedural background**

Plaintiff filed this action on September 15, 2016. (Compl.) Lyons and Bogle moved to dismiss the Complaint on August 9, 2017. (Bogle Mot.; Lyons Mot.) On August 25, 2017, the Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation, (*see* Order dated Aug. 25, 2017), and on September 5, 2017, the case was reassigned to Magistrate Judge Sanket J. Bulsara, (*see* Order dated Sept. 5, 2017). Judge Bulsara recommended that the Complaint be dismissed without prejudice for lack of diversity jurisdiction,[2] and that Defendants' requests for sanctions be denied. (R&R 21.)

Judge Bulsara found that Plaintiff and Lyons are both domiciled in New York. (*Id.* at 7.) In determining Lyons' state of citizenship, Judge Bulsara reviewed the submissions from Lyons, purporting to establish that she is domiciled in New York, as well as the submissions from Plaintiff, purporting to establish that Lyons is domiciled in New Jersey.[3] (*See* Lyons Letter dated Nov. 3, 2017, Docket Entry No. 29; Lyons Letter dated Nov. 27, 2017, Docket Entry No.

---

[2] Plaintiff's indication that diversity of citizenship is the basis for federal jurisdiction suggests that his malicious prosecution claims are brought pursuant to New York state law. (Compl. at 7, Docket Entry No. 1 (indicating "diversity of citizenship" as basis for jurisdiction).) In the R&R, Judge Bulsara did not consider whether Plaintiff's malicious prosecution claims could be construed as being brought pursuant to 42 U.S.C. section 1983. However, even if the Court were to construe the claims as brought under section 1983, they would nevertheless fail, because Plaintiff does not allege any violation of his rights by a state actor, nor does he allege "a deprivation of liberty amounting to a seizure under the Fourth Amendment." *Spak v. Phillips*, 857 F.3d 458, 462 n.1 (2d Cir. 2017).

[3] Judge Bulsara correctly noted that where "jurisdictional facts are placed in dispute," a court analyzing whether it has jurisdiction may look to "evidence outside the pleadings . . . ." *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec.*, 600 F. App'x 807, 808 (2d Cir. 2015) (same).

31; Lyons Letter dated Dec. 19, 2017, Docket Entry No. 34; Pl. Letter dated Dec. 14, 2017, Docket Entry No. 35; Morales Letter dated Dec. 20, 2017, Docket Entry No. 36.)

With respect to Lyons' ties to New Jersey, Judge Bulsara observed that the Complaint was served on Lyons at an address located in Newark, New Jersey, and also noted Lyons' statements in her Answer and moving papers that she is a resident of that state. (R&R 8–9.) Judge Bulsara also considered evidence submitted by Plaintiff, consisting of three transcripts of proceedings in Kings County Family Court, dated August 27, 2014, July 1, 2016, and September 27, 2016, during which Lyons stated that she resides in Orange, New Jersey. (*See* Tr. of State Court Proceedings, annexed to Pl. Letter dated Dec. 14, 2017 as Exs. A–C.) Plaintiff also submitted other documents which list Lyons' address as the same Orange, New Jersey location: a Notice of Emergency Removal and a Complaint, dated August 26, 2015 and August 28, 2015, respectively, both from a New Jersey state court child removal proceeding, (Notice of Emergency Removal and Compl., annexed to Pl. Letter dated Dec. 14, 2017 as Exs. D and E); photocopies of Lyons' 2015 tax filings, (2015 Tax Filings, annexed to Pl. Letter dated Dec. 14, 2017 as Ex. F); a Petition for a Modification of an Order of Support dated March 22, 2016, and a Financial Disclosure Affidavit dated April 19, 2016, both of which were filed by Lyons in Kings County Family Court, (Pet. for Modification and Fin. Disclosure Aff., annexed to Pl. Letter dated Dec. 14, 2017 as Exs. G and H); and Lyons' earnings statements for the pay periods ending March 15, 2016, March 31, 2016, April 15, 2016, May 31, 2016, and June 30, 2016,[4] (Earnings

---

[4] Judge Bulsara also reviewed a December 20, 2017 letter submitted by Camille Devi Morales, whom Plaintiff claims is a property manager for the address listed on Lyons' New York driver's license. (Morales Letter dated Dec. 20, 2017, Docket Entry No. 36.) The letter states that "Christen Lyons was never listed as a tenant of record" at the address. (*Id.*) Judge Bulsara declined to give the letter any weight in his analysis given the incorrect spelling of Lyons' name. (R&R 10 n.7.) On February 8, 2018, Plaintiff submitted a revised letter from Morales stating

Statements, annexed to Pl. Letter dated Dec. 14, 2017 as Ex. I).

Judge Bulsara nevertheless concluded that "[b]ased on the record . . . Plaintiff has not met his burden of establishing that Ms. Lyons is a citizen of a state other than New York." (R&R 8.) Judge Bulsara noted Lyons' November 3, 2017 letter to the Court, in which Lyons explained that while she "currently reside[s] in the state of New Jersey, [her] legal residence is the [s]tate of New York, which [Plaintiff] is aware of." (Lyons Letter dated Nov. 3, 2017; R&R 11.) In support of her assertion, Lyons provided a copy of her New York state driver's license, which bears a Staten Island, New York address. (New York Driver's License, annexed to Lyons Letter dated Nov. 3, 2017 at 22.)[5] The license was issued on January 20, 2015 and expires on January 21, 2023. (*Id.*) Lyons also submitted a separate letter explaining that since 2013, she had been splitting her time between New York and one of her mother's homes, located at 119 Ward Street in Orange, New Jersey. (Lyons Letter dated Nov. 27, 2017.) Lyons further stated that she began spending less time at her mother's home after Plaintiff "plac[e]d the Orange, N[ew] J[ersey] address on the internet on 8/30/2015 . . . ." (*Id.*)

Judge Bulsara also considered additional documentation suggesting that Lyons is domiciled in New York. On December 19, 2017, Lyons submitted photocopies of her car

---

that "Christina Lyons was never listed as a tenant of record" at the address. (Morales Letter dated Jan. 30, 2018, annexed to Pl. Submission as Ex. C, Docket Entry No. 42-1.) Regardless of whether Lyons is listed as a "tenant of record" at this address, Lyons' assertion that she has resided there is supported by, among other things, her driver's license, car insurance information, employment statements, and the birth certificate of her daughter, discussed *infra* pp. 6–7. The Court therefore credits Plaintiff's assertion that she has lived at the Staten Island, New York address.

[5] Because the documents submitted by Lyons, including the photocopy of her driver's license, are not attached as separate exhibits to her letters to the Court, the Court refers to the page numbers assigned by the electronic document filing system (ECF).

insurance information, earnings statements, and the birth certificate of her younger daughter. (Lyons Letter dated Dec. 19, 2017.) The car insurance documentation includes photocopies of two New York state car insurance identification cards, one effective October 1, 2015 through April 1, 2016, and the other effective October 1, 2016 through April 1, 2017. (*Id.* at 7–8.) Both cards indicate that Lyons has a Staten Island, New York address, (*id.*), as do the earnings statements, dated May 31, 2016, June 30, 2016 and October 31, 2016, (*id.* at 10–12); and the birth certificate, dated October 14, 2013, (*id.* at 13).[6]

Weighing the evidence, Judge Bulsara found that Plaintiff has, at most, established that Lyons has resided in New Jersey, but has not established New Jersey as her domicile for purposes of diversity of citizenship. (R&R 12.) As the R&R notes, because Lyons "ha[d] once been a citizen of New York, the evidence is insufficient to establish — notwithstanding the references to the New Jersey address and the New Jersey tax return — that Ms. Lyons ever intended to change her domicile from New York to New Jersey." (R&R 15.)

Judge Bulsara also recommended that the Court dismiss the claim against Bogle. (R&R 16–17.) Judge Bulsara concluded that there is no diversity jurisdiction over the claim against Bogle because it does not meet the amount-in-controversy requirement, (R&R 16), and recommended that the Court decline to exercise supplemental jurisdiction over the claim without

---

[6] In a separate filing, Lyons also submitted the following: a June 25, 2017 invoice from a Staten Island car wash and repair shop; police reports of domestic incidents between Plaintiff and Lyons; orders of protection obtained by Lyons against Plaintiff in New York state court in 2010, 2012 and 2013; and a document indicating that Lyons is registered to vote at a Staten Island, New York address. (Lyons Letter dated Dec. 12, 2017 at 2–30, Docket Entry No. 33.) However, the Court finds that these documents are of little assistance in determining Lyons' domicile at the time this action was commenced: the car wash and repair shop invoice does not list the name of the customer, the incidents reflected in the police reports took place in both New York and New Jersey and do not otherwise contain relevant information, and the document reflecting the address at which Lyons is registered to vote is undated.

7

a proper basis for original federal jurisdiction, (R&R 17).

## II. Discussion

### a. Standards of review

#### i. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

#### ii. Subject matter jurisdiction

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. sections 1331 and 1332. Federal question jurisdiction

provides federal courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Bounds v. Pine Belt Mental Health Care Res.*, 593 F.3d 209, 215 (2d Cir. 2010) (quoting 28 U.S.C. § 1331). A plaintiff properly invokes section 1331 jurisdiction when he pleads a colorable claim "arising under" the Constitution or laws of the United States. Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

For a federal court to exercise subject matter jurisdiction based on diversity of citizenship, there must be complete diversity between all plaintiffs and all defendants. *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' i.e. all plaintiffs must be citizens of states diverse from those of all defendants."); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction."). The party asserting diversity jurisdiction bears the burden of proving that it exists by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). In order for a court to have jurisdiction, diversity of citizenship need only exist at the time the action is commenced. *Dukes ex rel. Dukes v. New York City Emps.' Ret. Sys., & Bd. of Trustees*, 581 F. App'x 81, 82 (2d Cir. 2014) (first citing 28 U.S.C. § 1332(a); and then citing *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (citations omitted). "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *New Canaan Capital Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) (quoting *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009)); *see also Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017) ("Although the individual plaintiff and the individual defendants are alleged to be residents of certain States, such an allegation is insufficient to plead citizenship." (citations omitted)). Moreover, "one may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir.) (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)), *cert. denied*, 138 S. Ct. 282 (2017).

"One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs." *Linardos*, 157 F.3d at 948 (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). A person changes their domicile only when they take up residence in a new domicile and intend to stay. *Davis*, 691 F. App'x at 673. To determine whether an individual intends to stay in a particular state and thereby effects a change in domicile, courts must look to the "totality of the evidence," considering, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; payment of taxes; whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Capital Mgmt., LLC*, 2017 WL 1157153, at *4 (quoting *Trs. of Testamentary Tr. of*

*Will of Kennedy*, 633 F. Supp. 2d at 81). Whether a person intended to stay and thereby change his or her domicile from one state to another is a question of fact, and a "party alleging that there has been a change of domicile has the burden of proving the 'required intent to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"[7] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (alterations omitted) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

    b. **Unopposed recommendations**

No party objected to Judge Bulsara's recommendation that the Court deny Defendants' requests to impose sanctions against Plaintiff.

The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court denies Defendants' requests for sanctions.

    c. **Plaintiff's objections**

Plaintiff filed objections to the R&R on January 25, 2018,[8] arguing that Judge Bulsara

---

[7] The Second Circuit has clarified that "the factual questions that inform a determination as to federal jurisdiction need not be submitted to a jury and may be resolved by the Court." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42–43 (2d Cir. 2000) (first citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984); and then citing *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)).

[8] Plaintiff's objections were filed ten days after the fourteen-day deadline to object to the R&R. (Pl. Obj. to R&R, Docket Entry No. 39.) District courts have discretion when deciding whether to consider untimely objections. *Compare Leibovitz v. City of New York*, No. 14-CV-3297, 2017 WL 3433608, at *3 (S.D.N.Y. Aug. 10, 2017) (declining to consider untimely objections and applying clear error standard in adopting report and recommendation), *appeal docketed*, No. 17-CV-2690 (2d Cir. Aug. 29, 2017), *with E. Sav. Bank, FSB v. Bowen*, No. 13-CV-3633, 2017 WL 2375928, at *1 (E.D.N.Y. May 31, 2017) (granting *pro se* litigant who filed untimely objections "an extension of time, *nunc pro tunc*, through the date his objections were

erred by concluding that Lyons is domiciled in New York, and submitting additional evidence in support of his argument that she is domiciled in New Jersey. (Pl. Obj.) Plaintiff asserts that "[f]or a domicile to be true and complete, a person must have 1) inhabited the residence[] for a prescribe[d] time which in New York is [eleven] [m]onths[,] [and] 2) [a] place that is [a] permanent home, where her and her family can return to at any time with the intention of remaining." (*Id.* at 3.) Plaintiff further argues that Lyons "is unknown at [the New York] address as being a tenant at any point in time," and that Lyons "cannot show up at this address at any time and resume living, because she has never lived there." (*Id.*) Plaintiff claims that Lyons "has been a [c]itizen of New Jersey [s]ince June 2009," and, after changing residences several times, moved to Orange, New Jersey "on or about the ending of 2012 [or the] beginning of 2013," where she "still holds her residency." (*Id.* at 1–2.)

Plaintiff also claims that Lyons failed to serve him with a copy of certain of her previous submissions. (*Id.* at 1.) In light of the foregoing, Plaintiff requests "[m]ore time to properly address" the issue of Lyons' domicile, and also requests the following: an evidentiary hearing to further explore the issue, an order permitting Plaintiff to "cross-examine" both "the apartment lease holder"[9] and Lyons' mother, and an order requiring mobile communications company T-Mobile to produce Lyons' cellular telephone data history. (*Id.* at 4.)

---

filed" and reviewing objections "under the same standard that would apply had they actually been filed in a timely manner"). In light of Plaintiff's *pro se* status, the Court exercises its discretion and accepts the untimely filing.

[9] The Court understands "the apartment leaseholder" to refer to the individual whom Plaintiff believes lives in the Staten Island, New York apartment where Lyons claims to have resided.

12

### i. Additional evidence submitted by Plaintiff

The Court briefly summarizes the additional evidence Plaintiff submitted.[10]

### 1. Investigation summary and case notes

Plaintiff submitted what appears to be an investigation summary and excerpts of case notes from a New Jersey Department of Children and Family Services investigation. (Investigation Summary and Case Notes, annexed to Pl. Obj. as Exs. B–D.) The materials are not dated, but reflect events that occurred in 2015 and 2016. (*Id.* at 13–21.)[11]

Plaintiff highlights portions of the notes listing the address of Ms. DiMartinez — who appears to be Lyons' mother — at a property located in Newark, New Jersey, (*id.* at 13; *id.* at 15; *id.* at 16), and a property located in Richmond, Virginia, (*id.* at 18). Plaintiff asserts that this documentation suggests that Lyons falsely represented to the Court that her mother lives in Orange, New Jersey at 119 Ward Street, the address where Lyons claimed that she "split [her] time." (*Id.* at 2.)

Plaintiff also highlights portions of the notes summarizing investigators' visits to 119 Ward Street on August 16, 2016 and August 17, 2016. (*Id.* at 20–21.) The notes reflect that during the visit on August 16, 2016, a woman whom investigators believed to be Lyons answered the door, but she did not explicitly identify herself. (*Id.* at 21.) During the visit the

---

[10] Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling. Fed. R. Civ. P. 72(b). In light of Plaintiff's *pro se* status, the Court exercises its discretion to consider the new evidence submitted with his objections. *See Augustin v. Capital One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling).

[11] Because the exhibits attached to Plaintiff's objections are not consecutively paginated, the Court refers to the page numbers assigned by the electronic document filing system (ECF).

13

next day, Lyons answered the door, identified herself, and had a brief discussion with the investigator. (*Id.* at 20.) In addition, the notes also state that Lyons' children attended school in Newark, New Jersey, and a doctor and a therapist both based in New York have been treating Lyon's children on an ongoing basis. (*Id.*) Plaintiff asserts that this documentation undermines Lyons' argument that she is domiciled in New York, because "[p]olice and children['s] services have had interactions with her in and at the [O]range, NJ address . . . at the time Ms. Lyons claims no[t] to be [in] the state of New Jersey." (*Id.* at 2.)

### 2. Other evidence

Plaintiff submitted information from what appears to be a public website containing details for a property listed at 121 Ward Street in Orange, New Jersey. (Property Information, annexed to Pl. Obj. as Ex. A.) The owner of the property is listed as Shawn Landrum, (*id.* at 7, 9), whom Plaintiff asserts is "not of any relation to Ms. Lyons nor her mother," (*id.* at 2). Plaintiff argues that this further supports his assertion that Lyons falsely represented that 119 Ward Street is her mother's home, because the 119 Ward Street property and the 121 Ward Street property are, according to Plaintiff, "deeded as a dual address." (*Id.*)

In addition, Plaintiff provided copies of Lyons' 2012 tax returns, where Lyons listed her mailing address as 119 Ward Street in Orange, New Jersey. (2012 Tax Filings, annexed to Pl. Obj. as Ex. E.)

Plaintiff also submitted additional documents from state court proceedings, including a December 6, 2016 order from New York state court dismissing a family court action for lack of jurisdiction. (State Ct. Docs., annexed to Pl. Obj. as Ex. G.) The order states that "[a]ll Petitions [are] dismissed with prejudice; New Jersey retains jurisdiction on custody and visitation." (*Id.* at 38.)

14

Finally, Plaintiff submitted a photocopy of a Credit One Bank statement, listing Lyons' address as 119 Ward Street in Orange, New Jersey, (Credit One Bank Statement, annexed to Pl. Obj. as Ex. I), as well as photocopies of receipts of payment, dated May and June of 2016, made to a day care located in Newark, New Jersey for the care of Plaintiff and Lyons' daughter,[12] (Day Care Receipts, annexed to Pl. Obj. at 77–79.)[13]

### ii. The evidence establishes that Lyons was domiciled in New York

Viewing the evidence submitted by both parties, the Court finds that Lyons — as the R&R notes — was initially domiciled in New York. The birth certificate of Lyons' daughter indicates that Lyons was born in Staten Island, New York, and, at the time of her daughter's birth in October of 2013, still resided there. (Birth Certificate.) This is sufficient to establish Lyons' presumptive domicile as New York. *See Palazzo ex rel. Delmage*, 232 F.3d at 42 ("Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." (citing *Linardos*, 157 F.3d at 948)). Because Lyons' birth establishes her domicile as New York, Plaintiff therefore bears the burden of demonstrating by clear and

---

[12] On February 7, 2018, a representative from the Kings County Family Court submitted, at Plaintiff's request, additional pay stubs and tax returns that Plaintiff claims Lyons submitted in connection with a previous state court proceeding. (*See* Letter dated Jan. 31, 2018 and Exhibits, Docket Entry No. 44.) On February 8, 2018, Plaintiff submitted additional documentation purporting to establish that Lyons is domiciled in New Jersey. (*See generally* Pl. Submission.) In his submission, Plaintiff states that Lyons obtained from New Jersey state court another restraining order against him after receiving his objections to the R&R, due to concerns of harassment and identity theft. (*Id.* at 1.) Plaintiff attaches to the submission, among other things, additional state court documents, the revised letter regarding Lyons' tenancy at her purported Staten Island, New York address, and additional photocopies of Lyons' pay stubs. (*See* Exs. A–G.) The Court finds that these documents are largely cumulative of Plaintiff's prior submissions and, for the reasons discussed *infra* at pp. 16–19, do not establish by clear and convincing evidence that Lyons intended to effect a change in her domicile.

[13] Because the photocopies of the day care receipts are not attached to Plaintiff's objections as a separate exhibit, the Court refers to the page numbers assigned by the electronic document filing system (ECF).

convincing evidence that Lyons moved to New Jersey, and intended to remain there, thereby effecting a change in her domicile. For the reasons discussed below, Plaintiff has failed to carry this burden.

### iii. Plaintiff has not established by clear and convincing evidence that Lyons intended to change her domicile

While Plaintiff has submitted evidence suggesting that Lyons resided in New Jersey at various points over the last several years, and that her children attended school in New Jersey at some unspecified time, these facts are not dispositive. *See New Canaan Capital Mgmt., LLC*, 2017 WL 1157153, at *4 (finding that, in assessing a party's intent for purposes of domicile, "[n]o single factor is determinative" (quoting *Kennedy*, 633 F. Supp. 2d at 81)). The record also contains documentation undermining the conclusion that Lyons intended to take up a new domicile in New Jersey. For example, in addition to Lyons' New York driver's license, New York car insurance information, and earnings statements reflecting her New York address, Lyons' Financial Disclosure Affidavit filed in Kings County Family Court indicates that, at the time it was completed in 2016, Lyons was also working in New York. (Fin. Disclosure Aff.) In addition, while her children did at some point attend school in New Jersey, they were treated by doctors and therapists in New York on a weekly basis. (Investigation Summary and Case Notes at 20.) Furthermore, Lyons noted on her 2012 tax filings that her mailing address is located in New Jersey, but listed her *permanent address* as located in Staten Island, New York. (2012 Tax Filings at 23.)

The Court finds that the evidence as to Lyons' domicile is, at best, conflicting. Plaintiff has therefore failed to establish by clear and convincing evidence that Lyons has intended to remain in New Jersey and thereby change her domicile. *See Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008)

16

("Because there is conflicting evidence supporting domicile in New York and Florida, [the plaintiff] has not provided clear and convincing evidence that she changed her domicile from New York to Florida. Thus, her presumptive domicile is New York." (citations omitted)); *see also Bank of India v. Subramanian*, 2007 WL 1424668, at *5 (S.D.N.Y. May 15, 2007) (weighing evidence and finding that "the presumptive domicile prevails where, as here, the record supports two potential domiciles" (citations omitted)); *Palazzo ex rel. Delmage v. Corio*, No. 97-CV-7565, 1999 WL 33915986, at *5 (E.D.N.Y. Apr. 27, 1999) ("In light of the strong presumption in favor of continuing domicile, and given the heightened standard of proof that plaintiffs face, this Court concludes that plaintiffs have not demonstrated by clear and convincing evidence that defendant had changed his domicile from New York to Pennsylvania."), *report and recommendation adopted sub nom. Palazzo v. Corio*, No. 97-CV-7565, 1999 WL 1288972 (E.D.N.Y. Nov. 3, 1999), *aff'd sub nom. Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38 (2d Cir. 2000); *see also Lee v. Charles*, No. 12-CV-7374, 2013 WL 5878183, at *3 (S.D.N.Y. Nov. 1, 2013) (finding that, "after considering all of the relevant evidence . . . [d]efendants have not overcome the 'strong presumption' in favor of [p]laintiff's established domicile" (quoting *Kinsley v. Signorelli,* No. 92-CV-6421, 1993 WL 127965, at *3 (S.D.N.Y. Apr. 20, 1993))).

Plaintiff's remaining arguments to the contrary are without merit. First, the documents reflecting the ownership of 121 Ward Street do not support the argument that Lyons' mother does not own or reside at 119 Ward Street, because the documents make no reference to 119 Ward Street; Plaintiff's argument relies entirely on the unsupported assertion that 121 Ward Street and 119 Ward Street are "deeded as a dual address." (Pl. Obj. 2.) Second, the Court rejects Plaintiff's argument that in order for Lyons to be domiciled in New York, she must have

17

"inhabited the residence[] for a prescribe[d] time which in New York is [eleven] months . . . ." (*Id.* at 3.) Plaintiff provides no basis for this argument, and, in any event, overlooks the fact that "[t]he determination of domicile is a matter of federal common law, not state law."[14] *Lee*, 2013 WL 5878183, at *2 (quoting *Pacho v. Enterprise Rent–A–Car*, 510 F. Supp. 2d 331, 334 (S.D.N.Y. 2007)). Third, the December 6, 2016 New York Family Court order dismissing a state court proceeding for lack of jurisdiction, and stating that New Jersey "retains jurisdiction on custody and visitation," does not provide any context as to the facts surrounding the entry of the order, or the State Court's reasoning, and it is therefore insufficient to establish domicile.

The Court therefore dismisses the Complaint for lack of subject matter jurisdiction[15] and denies without prejudice Plaintiff's requests for evidentiary hearings and discovery on the issue of Lyons' domicile. Judge Bulsara has afforded the parties sufficient opportunity to submit evidence for purposes of resolving Defendants' motions, and both sides filed documents supporting their positions. However, in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend the Complaint to allege facts supporting diversity jurisdiction.

The Court recognizes Lyons' concern that Plaintiff has used the discovery process in this

---

[14] Plaintiff also appears to argue that Lyons' statement in her moving papers that she is a New Jersey resident estops her from arguing that she is domiciled in New York. (Pl. Obj. 2–3.) This argument was considered by Judge Bulsara and properly rejected because, among other things, it conflates Lyons' residence with her domicile. (R&R 13 n.9.)

[15] The Court agrees with Judge Bulsara's conclusion that there is no diversity jurisdiction over the claim against Bogle because Plaintiff's request for $25,000 in damages does not satisfy the amount-in-controversy requirement. Moreover, the Court may not exercise supplemental jurisdiction over that claim because, given the lack of diversity jurisdiction as to the claim against Lyons, there is no basis for original federal jurisdiction. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) ("[W]hen a district court correctly dismisses all federal claims for lack of subject–matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state–law claims." (citations omitted)).

action as a means to harass her. (*See* Lyons Letter dated Dec. 13, 2017.) The Court advises Plaintiff that any requests for additional discovery must first be submitted in writing to Judge Bulsara along with the grounds for such requests, and Plaintiff may not seek discovery from any party or non-party to this action, unless and until such requests are granted.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motions to dismiss the action without prejudice for lack of subject matter jurisdiction, and denies Defendants' requests for sanctions. The Court grants Plaintiff leave to file an amended complaint alleging facts supporting diversity jurisdiction within sixty (60) days of this Memorandum and Order.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: February 26, 2018
      Brooklyn, New York