```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KENRIC LEVER,

                              Plaintiff,
                                                              REPORT AND
          -against-                                           RECOMMENDATION
                                                              16-CV-5130-MKB-SJB
CHRISTINA LYONS,
LESCELE BOGLE,

                              Defendants.
----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

Plaintiff Kenric Lever ("Lever") originally filed this action against Defendants, Christina Lyons ("Lyons") and Lescele Bogle ("Bogle") (collectively, "Defendants"), in September 2016. (Compl. dated Sept. 15, 2016, Dkt. No. 1, at 3). All three parties are proceeding *pro se*, and the issue that has plagued this case from the outset is whether the Court has subject matter jurisdiction. The Court again concludes that subject matter jurisdiction does not exist.

This Court previously found that complete diversity did not exist between Lever and Defendants and, as a result, the Court lacked subject matter jurisdiction; the Court therefore recommended that Lever's Complaint be dismissed. The District Court agreed, and overruled Lever's objections. Thereafter, Lever filed an Amended Complaint on June 21, 2018. (Am. Compl., Dkt. No. 51). Defendants filed separate answers to the Amended Complaint, and asserted counterclaims against Lever for, among other things, harassment. (Answer to Am. Compl. ("Lyons Answer") dated Aug. 28, 2018, Dkt. No. 53; Answer to Am. Compl. ("Bogle Answer") dated Aug. 31, 2018, Dkt. No. 54). Lyons argued, as she had previously, that she and Lever were citizens of the same state, New York. (Lyons Answer at 1). Bogle argued that she had no personal

1

knowledge of any of Lever's allegations and that Lever's lawsuit was brought to harass her and Lyons.  (Bogle Answer at 1–2).

The Honorable Margo K. Brodie referred the Defendants' answers to the undersigned for a report and recommendation.  (Order Referring Mots. dated Oct. 23, 2018).  Because this Court has an independent obligation to ensure that subject matter jurisdiction exists, the Court has reexamined the issue by holding two evidentiary hearings and permitting the parties to submit additional documentary evidence in support of their respective positions.  *See Aretakis v. First Fin. Equity Corp.*, No. 14-CV-3888, 2014 WL 5499545, at *2 (E.D.N.Y. Oct. 30, 2014) ("Even without a challenge from any party, federal courts have an independent obligation to determine whether subject matter jurisdiction exists."); s*ee also RLS Assocs., LLC. v. United Bank of Kuwait PLC*, No. 01-CV-1290, 2002 WL 122927, at *5 (S.D.N.Y. Jan. 29, 2002) ("If the letter had been filed by a *pro se* defendant, then it might be appropriate for the Court to construe the letter liberally and treat it as a motion to dismiss for lack of jurisdiction or . . . as an answer to the complaint.").  Much of the evidence submitted—particularly from Lever—is repetitive and duplicative of the evidence previously submitted to the Court.  The new facts adduced at the hearings only reaffirm the Court's prior view that Lever has failed to carry his burden of demonstrating that complete diversity exists.  For that reason, the Court recommends again that the action be dismissed for lack of subject matter jurisdiction.  However, while the dismissal should be without prejudice, leave to file another amended complaint should be denied, and the Clerk of Court should be directed to close the case.

PROCEDURAL HISTORY

On September 15, 2016, Lever initiated this diversity action against Defendants,

2

asserting a variety of state-law claims including malicious prosecution, "libel/slander defamation," and "mental anguish." (Compl. at 3). On January 2, 2018, this Court recommended that the Complaint be dismissed without prejudice for lack of subject matter jurisdiction. *Lever v. Lyons* ("*Lever I*"), No. 16-CV-5130, 2018 WL 1521857, at *1 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (Feb. 26, 2018). The Court's recommendation was based upon the finding that both Lever and Lyons were citizens of New York, and that Lever had failed to demonstrate that Lyons was a citizen of New Jersey. *Id.* at *6.

The District Court concluded—after considering Lever's objections and additional evidence he submitted after the Report and Recommendation was issued—that Lyons was "initially domiciled in New York," and Lever had failed to establish, by clear and convincing evidence, that Lyons intended to effect a change in her domicile to New Jersey.[1] *Lever v. Lyons* ("*Lever II*"), No. 16-CV-5130, 2018 WL 1089328, at *8 (E.D.N.Y. Feb. 26, 2018) (adopting report and recommendation). Although Lever submitted evidence suggesting that Lyons had resided in New Jersey at "various points over the last several years," the evidence in the record also "undermin[ed] the conclusion that Lyons intended to take up a new domicile in New Jersey." *Id.* As a result, both Lever and Lyons were New York citizens at the time the Complaint was filed, there was not complete diversity between Plaintiff and Defendants, and the Court lacked subject matter jurisdiction. The District Court, therefore, adopted the Report and Recommendation in its entirety, and Lever's Complaint was dismissed without prejudice. *Id.* at *1.

---

[1] A party's citizenship depends on her domicile. *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998); *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017).

3

Lever was given leave to amend the Complaint to allege facts supporting diversity jurisdiction. *Id.* at *9; (Mem. & Order dated Feb. 26, 2018, Dkt. No. 45 (granting Lever 60 days to file an amended complaint)). He filed an Amended Complaint on June 21, 2018. (Am. Compl.). The Amended Complaint asserts that Lyons was a citizen of New Jersey, and marshals evidence Lever believes demonstrates that Lyons is a New Jersey citizen, including that: (1) the home where Lyons stays when in New Jersey—which Lyons stated was owned by her mother—does not appear in New Jersey property records; (2) at various court proceedings in New York and New Jersey, Lyons stated that she lived in New Jersey; and (3) Lyons has filed New Jersey tax returns, and listed New Jersey addresses on her paystubs and other documents. (Am. Compl. at 2–3; *see also* Exs. A–J, attached to Am. Compl., Dkt. No. 51). In light of these conflicting views, the Court held two evidentiary hearings, where Lever and Lyons each testified separately. (Min. Order dated Mar. 21, 2019; Min. Order dated Apr. 3, 2019). Lyons and Lever both testified at the hearings under oath. (*See* Tr. of Hr'g Held on Mar. 21, 2019 ("Lever Tr.") filed Mar. 29, 2019, Dkt. No. 62, at 2:15; Tr. of Hr'g Held on Apr. 3, 2019 ("Lyons Tr.") filed Apr. 5, 2019, Dkt. No. 64, at 2:9). After the hearings, each side also submitted additional evidence for the Court's consideration.

In a letter filed after her hearing, Lyons informed the Court that Lever filed a lawsuit against her in New York state court on February 6, 2019, about a month before Lever's evidentiary hearing. (Letter dated May 13, 2019, Dkt. No. 71, at 4). The state court action alleges virtually the same claims as those in this action. (*Id.* at 7–9). The Court directed Lever to indicate whether he intended to continue to prosecute this lawsuit in federal court and to explain how this case differed from the state court lawsuit. (Order dated June 3, 2019). Lever responded, explaining that the underlying

4

incidents of the state court action, while similar to those in this case, happened in February 2018, and therefore the two actions related to separate time periods.  (Letter dated June 24, 2019, Dkt. No. 72).  This Court does not believe there is any meaningful distinction between the two actions.

The Court concludes, having evaluated the evidence submitted, the credibility of the parties at their respective hearings, and the law, that Lever failed to establish that at the time of filing of the Complaint, Lyons was a New Jersey citizen.[2]

## DISCUSSION

The Court assumes familiarity with the decisions in *Lever I* and *Lever II* and the legal standards contained therein.

The documentary evidence submitted by Lever in his Amended Complaint, which includes property records, court transcripts, and tax returns, does little to change the balance of the evidence from the original Complaint.  Very little, if any, of the evidence is new.  Much of it was provided in connection with the prior motions to dismiss, and large portions of it date back to 2013 or 2015, years before the Complaint was filed.  (*E.g.*, Tr. of Family Ct. Hr'g, attached as Ex. D to Am. Compl., Dkt. No. 51; Lyons's Billing Stmts. ("Billing Stmts."), attached as Ex. H to Am. Compl., Dkt. No. 51, at 1; Lyons's 2015 Tax Returns ("2015 Tax Returns"), attached as Ex. I to Am. Compl., Dkt. No. 51; Lyons's Earnings Stmts. ("Earnings Stmts."), attached as Ex. J to Am. Compl., Dkt. No. 51).  It is beyond dispute that that Lyons had ties to a 119 Ward Street address in New Jersey at various points prior to 2016, and for extended periods of time.  This was her mother's

---

[2] Lever first filed his Complaint in September 2016.  Although Lever filed the Amended Complaint in 2018, the domicile of the parties is determined as of the commencement of the action.  *Reyes v. Sprint Holdings, LLC*, No. 17-CV-624, 2018 WL 3369672, at *4 (E.D.N.Y. July 9, 2018) (collecting cases).

5

home. (Lyons Tr. at 4:10–15). But that is not dispositive of Lyons's citizenship. The question is whether "Ms. Lyons intended to be domiciled or live in New Jersey permanently." *Lever I*, 2018 WL 1521857, at *7. As this Court previously concluded, "having once been a citizen of New York, the evidence is insufficient to establish—notwithstanding the references to the New Jersey address and the New Jersey tax return[s]—that Ms. Lyons ever intended to change her domicile from New York to New Jersey." *Id.* Nothing attached to the Amended Complaint alters that conclusion:

    1.    Lever attaches a deed for 121 Ward Street, New Jersey and contends that Lyons's purported New Jersey address, 119 Ward Street, does not exist. (Am. Compl. at 2; Deed for 121 Ward Street, attached as Ex. A to Am. Compl., Dkt. No. 51). This document is of little use. It does not establish that Lyons ever intended to change her domicile. If anything, it undermines such an inference: if Lever could not find records evidencing Lyons's New Jersey property ownership, that makes it less likely that Lyons ever intended to reside there on a permanent basis. *See Braten v. Kaplan*, No. 07-CV-8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (listing "whether [s]he owns . . . property" as a factor in determining a person's domicile), *aff'd*, 406 F. App'x 516 (2d Cir. 2011).

    2.    As for the transcripts and documents from various Court proceedings, these also do little to clarify matters. (*See* Trs. of Kings County Family Ct. Proceedings, attached as Exs. D–G to Am. Compl., Dkt. No. 51). It is difficult to accord much, if any, value to these proceedings. The transcripts are full of extensive back-and-forth about all manner of topics, and lay bare the deep animosity between Lever and Lyons. Much of the relevant testimony regarding residence is about their daughter's residence. The transcript of proceedings held on August 27, 2014, (Tr. of Hr'g on Aug. 27, 2014,

6

attached as Ex. E to Am Compl., Dkt. No. 51), indicates that Lever goes to New Jersey to pick up his daughter. (*Id.* at 20:10–13). In that hearing, Lyons indicated to the state court judge that she moved to New Jersey in 2009. (*Id.* at 35:18–36:17). At a July 1, 2016 hearing in Brooklyn Family Court, Lyons used her mother's New Jersey address. (Tr. of Hr'g on July 1, 2016, attached as Ex. F to Am. Compl., Dkt. No. 51, at 3:12–13). And she asserted that her daughter's residence was New Jersey, not New York. (*Id.* at 10:18-19). Subsequently, the judge, at a December 6, 2016 hearing, stated that the child's residence was in New Jersey. (Tr. of Hr'g on Dec. 6, 2016, attached as Ex. G to Am. Compl., Dkt. No. 51, at 5:18-6:1).

Normally, a child's residence is somewhat probative of a parent's domicile; however, in this case, there has been testimony that the child resided with her grandmother in New Jersey. (Lyons Tr. at 10:17–11:3). But at the same time there is evidence she was with her mother in New York and was born in New York. *See Lever I*, 2018 WL 1521857, at *6. Ultimately, at none of these hearings is the domicile of Lyons fully explored or resolved, and no judge explores the apparent contradictions between Lyons's various statements about her residence.[3]

  3.  Lever also provides tax returns, credit card statements, and other documents that have Lyons listing her mother's New Jersey address. They include:

---

[3] In a letter dated April 29, 2019, Lever accused Lyons of committing perjury at her evidentiary hearing and, in support of that contention, attached a number of 2013 and 2014 transcripts that allege Lyons made statements about being a New Jersey resident. (*See* Notice dated Apr. 29, 2019 ("Lever Notice II"), Dkt. No. 68, at 1; Trs. of Brooklyn Family Ct. Proceedings, attached as Exs. A–B to Lever Notice II, Dkt. No. 68). These are of a piece with the transcripts submitted in the Amended Complaint: the domicile of Lyons is not discussed with sufficient specificity or clarity to provide meaningful guidance to the Court.

Lyons's 2015 federal tax returns, (2015 Tax Returns at 1–11); a 2015 New Jersey resident tax return, (*id.* at 12–14); 2015 New York tax forms, including a "Claim for Child and Dependent Care" and "Nonresident and Part-Year Resident Income Tax Return," (*id.* at 15–16, 18–21); a 2013 credit card bill, (Billing Stmts. at 1); a 2015 W-2 statement, (Summ. of W-2 Stmt., attached as Ex. I to Am. Compl., Dkt. No. 51, at 17); and 2015 and 2016 Earnings Statements, (Earnings Stmts.). An August 2016 New Jersey Department of Children and Families Investigations Summary lists Lyons's address as 119 Ward Street, New Jersey. (Dep't of Children & Families Investigation Summ., attached as Ex. K to Am. Compl., Dkt. No. 51, at 1). The document indicates that officers spoke to Lyons at that address. (*Id.* at 9). These documents have little consequence because they have already been the subject of the Court's prior Report and Recommendation, which was adopted by the District Court. In that prior decision, the Court reviewed the evidence and concluded that Lyons did have New Jersey ties, as her mother lived there. *See Lever I*, 2018 WL 1521857, at *5 ("On December 5, 2017, this Court gave Plaintiff an opportunity to come forward with any evidence that Ms. Lyons was a citizen of New Jersey when the lawsuit was filed. In response, . . . Plaintiff provided the following: three transcripts of proceedings in Kings County Family Court, dated August 27, 2014, July 1, 2016, and September 27, 2016 where Ms. Lyons states that her address is '119 Ward Street Orange, New Jersey 07050.' The letter also includes other court documents from New York and New Jersey state courts that list a New Jersey address for Ms. Lyons, Ms. Lyons's 2015 tax return with a New Jersey address and an in-state resident tax return for New Jersey and a nonresident or part-time resident tax return for New York, and pay stubs from March, April, May, and June 2016 with a New Jersey address for Ms. Lyons.") (citations omitted). But as the Court explained:

8

> [t]he various instances where Plaintiff listed Ms. Lyons's address as one in Orange, New Jersey are, at most, allegations of a residence, and the statements provided once the citizenship question came into focus indicate that the address is a temporary, periodic second residence of Ms. Lyons, not her primary residence or her domicile.

*Id.* at *6.

The additional documentary evidence Lever submitted after the evidentiary hearing also fails to demonstrate that Lyons's domicile is New Jersey:

    1.    First, Lever has submitted a number of documents, including pleadings, transcripts, and other filings from 2018 family court proceedings that took place in the Brooklyn and Staten Island Family Courts.  (Custody Pet., attached as Ex. A to Notice dated Apr. 26, 2019 ("Lever Notice I"), Dkt. No. 67; Tr. of Hr'g Held on Nov. 14, 2018 ("Nov. 14 Tr."), attached as Ex. B to Lever Notice I, Dkt. No. 67; Appl. for Order to Produce, attached as Ex. L to Lever Notice I, Dkt. No. 67; Summons to Lever in Custody Proceeding ("Staten Island Family Court Summons"), attached as Ex. N to Lever Notice I, Dkt. No. 67; Order of Dismissal, attached as Ex. P to Lever Notice I, Dkt. No. 67).  There has been a long battle between Lever and Lyons about the proper jurisdiction of the custody and visitation disputes between them, and specifically whether those cases should be heard in New York or New Jersey state court.  Much of this evidence post-dates the filing of the Complaint, and is therefore of little value, because the domicile question is to be determined as of the date of the filing of the original complaint in 2016.  In addition, like the pre-2016 family and state court proceedings, these papers and transcripts are filled with contradictory evidence, much of which is repetitive of facts previously submitted or is of little to no assistance in establishing the parties' respective domiciles.

2. Lever also provided an array of other documents, including a 2013 voter registration application, (New Jersey Voter Registration Appl., attached as Ex. C to Lever Notice I, Dkt. No. 67); 2013 emails and texts where Lyons indicates that Lever should pick up their daughter in New Jersey, (Forwarded Email from Lyons dated Mar. 14, 2013, attached as Ex. D to Lever Notice I, Dkt. No. 67; Screenshots of Text Exchanges, attached as Ex. R[4] to Lever Notice I, Dkt. No. 67); and day care records that list a New Jersey address for Lyons, (Emergency Contact Information for Happy Hands Day Care, attached as Ex. Q to Lever Notice I, Dkt. No. 67). Many of the documents Lever provided after the evidentiary hearing are *not* new, as they were previously submitted. (*E.g.*, Lever Resp. Regarding Lyons's Citizenship dated Dec. 15, 2017, Dkt. No. 35, Exs. A–C); *Lever I*, 2018 WL 1521857, at *5. As the Court previously noted, these documents were not sufficient to establish a New Jersey domicile, because there was other evidence suggesting that New York was Lyons's domicile. *Id.* at *6 ("[A]lthough . . . Lyons states that her address is in New Jersey in various court transcripts and documents, her subsequent statements following the Court's inquiry demonstrate these were admissions of a secondary temporary residence, not ones dispositive of her citizenship.") (citation omitted).[5]

---

[4] The exhibit is incorrectly labeled Exhibit "P."

[5] For example, Lever provided a number of his own documents that speak to Lyons's post-2016 New York ties. For instance, he includes a 2017 voter registration for Lyons; this more recent document has a New York address for her and registers her to vote in New York. (Voters Records from N.Y.C. Board of Elections, attached as Ex. I to Lever Notice I, Dkt. No. 67). The voter registration appends information regarding Lyons's address from the New York State Department of Motor Vehicles, indicating she has a New York license. (*Id.* at 3–4). Lever attaches medical records from 2016 and 2017 for their daughter; she received medical care in Staten Island. (Richmond Univ. Med. Ctr. Progress Note, attached as Ex. G to Lever Notice I, Dkt. No. 67). A background check run in 2019 contains New York, but no New Jersey, addresses for

\* \* \* \*

Ultimately, this Court's view about Lyons's citizenship remains unchanged from its earlier opinion. Lever bears the burden of demonstrating that he is a citizen of a state other than Lyons's—and in this case demonstrating that she was domiciled in New Jersey. *Reyes v. Sprint Holdings, LLC*, No. 17-CV-624, 2018 WL 3369672, at \*5 (E.D.N.Y. July 9, 2018); *Lever II*, at \*8 ("Because Lyons' birth establishes her domicile as New York, Plaintiff therefore bears the burden of demonstrating by clear and convincing evidence that Lyons moved to New Jersey, and intended to remain there, thereby effecting a change in her domicile.").

While Lever marshals a variety of proof, he fails to meet his burden. Much of the evidence provided to the Court was either already before the Court or is largely duplicative of prior submissions. The Court accepts that Lyons used a 119 Ward Street, New Jersey address for several years, lived at that location—filed a New Jersey resident tax return while doing so—and was involved in a variety of New Jersey court proceedings related to custody and other family court matters. At the same time, however, there is significant evidence of ties to New York, and Lever was obligated to come forth with evidence of Lyons's intent to change domicile. *Broadstone Realty Corp. v. Evans,* 213 F. Supp. 261, 265 (S.D.N.Y. 1962) ("A person may have several residences and can change [her] residence at will but domicile, once established, so remains until a new domicile is legally acquired."), *aff'd*, 367 F.2d 397 (2d Cir. 1966) (per curiam); *Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at \*3 (S.D.N.Y. Apr. 2, 2008) ("Because there is conflicting evidence

---

Lyons. (TruthFinder Background Report, attached as Ex. J to Lever Notice I, Dkt. No. 67).

11

supporting domicile in New York and Florida, [the plaintiff] has not provided clear and convincing evidence that she changed her domicile from New York to Florida. Thus, her presumptive domicile is New York.") (citations omitted).

Lever spends much time trying to demonstrate that Lyons lives in New Jersey. Where someone lives is one part—and an important factor—in determining domicile. However, it is not the only factor, 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2004) ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another."), and there has been little to demonstrate Lyons ever intended to permanently reside in New Jersey, abandon her New York connections, or otherwise take up New Jersey as her domicile. *Universal Reinsurance Co. v. St. Paul Fire And Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) ("[A] person may still be domiciled in a state even if a non-resident, so long as he or she has his home there and intends to return."); *e.g.*, *New Canaan Capital Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) ("Acknowledging that the Montes are in Virginia for the summer school vacation period, as well as certain holidays and family celebrations, these facts do not—under the circumstances here—demonstrate an intent to establish Virginia as their domicile.") (citation omitted). For example, Lyons has consistently held a New York driver's license, (Lyons Tr. at 5:4–13); she currently resides in New York, (*id.* at 3:21–4:7); her daughter's birth certificate reflects that Lyons lived in New York at that time, *Lever II*, 2018 WL 1089328, at *3; she brought custody proceedings in New York, (*see* Staten Island Family Ct. Summons); and she testified credibly that she has no intent of relocating to New Jersey, (Lyons Tr. at 5:14–16, 7:17–8:23). This leaves the Court in virtually the same place as it was in *Lyons I* and as Judge Brodie was in *Lever II*: faced

12

with evidence from Lyons that is in tension with the evidence from Lever. *Lever II*, 2018 WL 1089328, at *8 ("The Court finds that the evidence as to Lyons' domicile is, at best, conflicting."). That conflict means that Lever has failed to meet his burden of establishing, by clearing and convincing evidence, that Lyons intended to change her domicile. *Id.* ("Plaintiff has therefore failed to establish by clear and convincing evidence that Lyons has intended to remain in New Jersey and thereby change her domicile.").

But now there are more facts that buttress, rather than undermine, the Court's prior conclusion. The New Jersey Family Court, after having both Lever and Lyons testify and reviewing documentary evidence, came to the same conclusion this Court reaches: notwithstanding the use of 119 Ward Street and Lyons's presence there, Lyons provided "detailed proof" that she was a resident of New York.[6] In June 2018, the New Jersey family court concluded that:

> [T]his matter is dismissed for lack of jurisdiction. Both parties and the child are found to be residents of New York State. [That t]he child's attendance in school is in New Jersey is not dispositive to the question of the child's home state. The Natural Mother [Lyons] provided detailed proof that she

---

[6] The Court is troubled by some of Lyons's testimony in other proceedings in which she has provided New Jersey addresses. For instance, in Brooklyn family court, she provided a new New Jersey address, and indicated that she lived in New Jersey. (Nov. 14 Tr. at 14:15–15:23). However, this does not conflict with the Court's conclusion. While Lyons stated in one proceeding that she resided in New Jersey, there is no indication that she intended to permanently reside in New Jersey or otherwise forsake her New York connections. *See, e.g.*, *NYC St. Tree Consortium, Inc. v. Eber-Schmid*, No. 07-CV-348, 2009 WL 398726, at *4 (S.D.N.Y. Feb. 18, 2009) ("In hopes of demonstrating that Defendants' domicile lies in New Jersey, rather than New York, [plaintiff] highlights portions of Defendants' . . . deposition testimony, selected representations to third parties, and shopping and commuting habits[.] On the basis of that evidence, [plaintiff] contends that Defendants spend the vast majority of their time in New Jersey, treat the [New Jersey] House as their home, and use the [New York] Apartment as, at most, a secondary residence. Even accepting the truth of these facts, they do not defeat the multitude of factors that belie any intent, on Defendants' part, to change their domicile.").

13

> is a resident of New York.  New Jersey does not have jurisdiction over the custody interest in this matter . . . .  The Natural Mother [Lyons] has commenced custody litigation in New York, Richmond County . . . .  All further custody and support litigation shall be conducted in New York.  The Natural Mother's [Lyons's] New York address shall be confidential.  All service of process . . . may be served upon the Natural Mother [Lyons] at the Orange, N.J. address (119 Ward Street).

(New Jersey Order of Dismissal filed Apr. 3, 2019, Dkt. No. 63, at 2).  Lever has done nothing to rebut or challenge this finding of the New Jersey court; he ignores it in his papers.  This Court may take judicial notice of the New Jersey court's conclusion and accord it weight in concluding that Lyons's domicile was New York.  *See Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.") (quotations omitted); *e.g.*, *Rountree v. US Bank NA*, No. 15-CV-9018, 2017 WL 31405, at *1 (S.D.N.Y. Jan. 3, 2017) ("This Opinion also considers pleadings and orders from Plaintiff's Idaho state-court litigation [in evaluating subject matter jurisdiction].").

There is more.  The Court held two hearings on the question of Lyons's domicile, with Lever testifying at one and Lyons at the other.  (Min. Order dated Mar. 21, 2019; Min. Order dated Apr. 3, 2019).  At her hearing, Lyons testified that she had used a New Jersey address, and had resided with her mother at various points.  (Lyons Tr. at 5:17–21, 6:3–8, 6:16–7:6).  But she testified that she had never been a New Jersey resident, (*id.* at 5:14–16), and used the Ward Street address in the New Jersey proceedings because her daughter attended school in New Jersey at the time, (*id.* at 9:9–10:1, 10:17–11:4).  She also stated she never had any intention of moving permanently to New Jersey.  (Lyons Tr. at 5:14–16); *see also Lever I*, 2018 WL 1521857, at *7.  The Court found this testimony to be credible and worthy of belief.  Such evidence has been

14

sufficient for other courts to determine a witness's domicile. *See, e.g.*, *Wiest v. Breslaw*, No. 01-CV-5663, 2002 WL 413925, at *7 (S.D.N.Y. Mar. 15, 2002) ("The facts adduced by plaintiff . . . do not, at bottom, contradict Mr. Smith's testimony that he considers Florida to be his domicile, an assertion supported by his credible testimony[.]"); *Barnes v. Aurelius*, No. 12-CV-8179, 2013 WL 5548864, at *3 (S.D.N.Y. Sept. 27, 2013) ("After considering Aurelius's testimony and the documentary evidence introduced at the hearing, as well as the arguments and other materials submitted by the parties before the hearing, the Court finds Aurelius credible and concludes that his domicile is indeed California.").

There is one final fact that supports the Court's conclusion that Lyons was not domiciled in New Jersey. As of the filing of the Amended Complaint, Lyons's mother no longer lived in New Jersey, and had not been living there for almost a year. (Lyons Tr. at 6:16–7:12 ("Ms. Lyons: My mom stopped living in New Jersey for a year. . . . That was . . . 2016 to 2017. . . . And then she maintained going back and forth between New York and Virginia. My mom relocated for work but I was to maintain her apartment with my brother, which is the 119 Ward Street [address], so she never relinquished the apartment until this past summer of 2018.")). This testimony was unrebutted by Lever, or by the materials he submitted after his evidentiary hearing. This suggests that, to the extent that Lyons ever spent time in New Jersey, she no longer has any appreciable ties to New Jersey—since those ties were all based on residing with her mother. Indeed, there is no contention that Lyons is presently residing in New Jersey at another residence. While the Court focuses on Lyons's citizenship as of September 15, 2016, when the Complaint was filed, these subsequent events are indicative of her prior intent. That is, it is unlikely that in 2016 Lyons intended to permanently change her domicile to

15

New Jersey if, in the years since, she has failed to do so. *Garcia Perez v. Santaella*, 364 F.3d 348, 350–51 (1st Cir. 2004) ("The key point of inquiry is whether diversity of citizenship existed at the time the suit was filed; subsequent events may bear on the sincerity of a professed intention to remain but are not part of the primary calculus."); *e.g.*, *Chico Gomez v. Gonzalez Alonso*, 261 F. Supp. 3d 156, 162 (D.P.R. 2016) ("[S]ubsequent events after filing may bear on the sincerity of professed intention to remain. . . . In this case, looking to Chico's subsequent actions provides helpful insight.") (citation omitted); *Evert v. Finn*, No. 98-CV-3293, 2000 WL 135847, at *4 (E.D. La. Feb. 4, 2000) ("His subsequent actions, such as moving to a new residence in the same city as his family and filing his own lawsuit as a Florida citizen, although not determinative of domicile because they happened after the Everts filed their suit, tend to confirm this inference.").

As to Lever's claims against Bogle, the Court recommends they be dismissed, because the Court has concluded that complete diversity does not exist and it therefore lacks subject matter jurisdiction over the entire action. *See Chiu v. Au*, No. 02-CV-2081, 2003 WL 21003441, at *1 (D. Conn. Mar. 28, 2003) ("The requirements for diversity must be met for each defendant, or the entire case must be dismissed."). In his original Complaint, Lever sought only $25,000 in damages from Bogle, an amount that does not satisfy the amount-in-controversy requirement. *Lever I*, 2018 WL 1521857, at *8. In his Amended Complaint, Lever seeks $350,000 from both Defendants. (Am. Compl. at 3). This increase does not now give the Court jurisdiction over his claims against Bogle, who does not dispute she is a citizen of New Jersey. "[A] defect of diversity, as opposed to amount-in-controversy[,] eliminates every claim in the action, including any jurisdictionally proper action that might otherwise have anchored original jurisdiction,

16

and removes the civil action from the purview of [the supplemental jurisdiction statute, 28 U.S.C.] § 1367 altogether." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 921 F. Supp. 2d 158, 162 (S.D.N.Y. 2013) (quotations, emphasis, and alterations omitted) (citing *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007)); *see also* 13D Wright & Miller § 3567.2 ("[T]he amount-in-controversy requirement is 'claim-specific,' while the complete diversity requirement is 'action-specific.'"). Here, because the presence of Lyons destroys complete diversity, Lever's entire Amended Complaint should be dismissed. *See, e.g.*, *Cushing v. Moore*, 783 F. Supp. 727, 733 (N.D.N.Y. 1992) ("Plaintiffs presumably ask the court to consider jurisdiction only as it relates to the diverse plaintiffs[.] This the court cannot do. The diversity statute is clear: if the case involves more than one plaintiff and more than one defendant, the court must be certain that *all* plaintiffs have a different citizenship from all defendants. . . . The court cannot sever, or otherwise avoid looking at, the entire case; the presence of some plaintiffs who share citizenship with some defendants destroys complete diversity of citizenship.") (quotations and alterations omitted), *aff'd in part, remanded in part on other grounds*, 970 F.2d 1103, 1106 (2d Cir. 1992).

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that this action be dismissed without prejudice for lack of subject matter jurisdiction. The Clerk of Court should be then be directed to close this case, without leave being granted to file a second amended complaint. *Krechmer v. Tantaros*, No. 16-CV-7820, 2017 WL 8777373, at *3 (S.D.N.Y. Dec. 1, 2017) ("Based on a review of the materials already submitted (which indicate clearly that Tantaros is and was a domicil[iary] of New York), and the fact that plaintiff has already been given one opportunity to amend his

complaint to plead diversity jurisdiction, the Court does not believe further amendment of the complaint is warranted here."), *aff'd*, 747 F. App'x 6 (2d Cir. 2018); *Masudi v. Wireless Channels, Inc.*, No. 09-CV-2411, 2010 WL 816156, at *1 (E.D.N.Y. Mar. 8, 2010) ("As plaintiff's amended complaint fails to demonstrate that diversity of citizenship exists, it is respectfully recommended that this action should be dismissed for lack of subject matter jurisdiction. Additionally, the Court should deny plaintiff[']s motion for leave to file a second amended complaint as futile.") (adopting report and recommendation).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision.").

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States Magistrate Judge

Dated: September 12, 2019
      Brooklyn, New York