UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
KENRIC LEVER,

                  Plaintiff,              **MEMORANDUM & ORDER**
                                       16-CV-5130 (MKB) (SJB)

      v.

CHRISTINA LYONS and LESCELE BOGLE,

                  Defendants.
---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Kenric Lever, proceeding *pro se*, commenced the above-captioned action on

September 15, 2016, against Defendants Christina Lyons and Lescele Bogle, also proceeding *pro*

*se*.  (Compl., Docket Entry No. 1.)  In a prior Memorandum and Order, the Court found that

complete diversity did not exist between Plaintiff and Lyons and dismissed the action for lack of

subject matter jurisdiction but granted Plaintiff leave to amend.[1]  Plaintiff filed an Amended

Complaint on June 21, 2018, asserting claims of false imprisonment, intentional infliction of

emotional distress, and defamation.  (Am. Compl., Docket Entry No. 51.)  The Court referred the

matter to Magistrate Judge Sanket J. Bulsara for a report and recommendation regarding the

Court's subject matter jurisdiction.  (*See* Order dated Oct. 23, 2018.)

        After evidentiary hearings on March 21 and April 3, 2019,[2] Judge Bulsara filed a report

and recommendation on September 12, 2019 (the "R&R"), recommending that the Court dismiss

---

[1]  *Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (E.D.N.Y. Feb. 26, 2018).

[2]  (*See* Tr. of Hr'g dated Mar. 21, 2019 ("Lever Tr."), Docket Entry No. 62; Tr. of Hr'g dated Apr. 3, 2019 ("Lyons Tr.") filed Apr. 5, 2019, Docket Entry No. 64.)

the Amended Complaint for lack of subject matter jurisdiction because both Plaintiff and Lyons

were domiciled in New York.  (R&R, Docket Entry No. 73.)  On October 29, 2019, Plaintiff

filed objections to the R&R.  (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 75.)

 For the reasons explained below, the Court adopts the R&R and dismisses the Amended

Complaint without prejudice for lack of subject matter jurisdiction.

**I. Background**

  **a. Procedural background**

 After Plaintiff filed his Complaint on September 15, 2016, Defendants moved to dismiss

it on August 9, 2017, for lack of subject matter jurisdiction and failure to state a claim pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively, and for

sanctions against Plaintiff.  (*See* Letter Mot. to Dismiss by Lescele Bogle, Docket Entry No. 26;

Letter Mot. to Dismiss by Christina Lyons, Docket Entry No. 27.)  On August 25, 2017, the

Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and

recommendation.  (*See* Order dated Aug. 25, 2017.)

 By report and recommendation dated January 2, 2018, Judge Bulsara[3] recommended that

the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction and

deny Defendants' requests for sanctions.[4]  (R&R dated Jan. 2, 2018 ("2018 R&R"), at 21,

Docket Entry No. 37.)  On February 26, 2018, the Court adopted the 2018 R&R in its entirety

over Plaintiff's objections.  (Mem. and Order dated Feb. 26, 2018, Docket Entry No. 45.)

---

[3]  The case was reassigned to Judge Bulsara on September 5, 2017.  (*See* Order dated Sept. 5, 2017.)

[4]  Judge Bulsara found that because Plaintiff and Lyons were domiciled in New York, the complete diversity necessary to support jurisdiction under 28 U.S.C. § 1332 did not exist.  (2018 R&R 17.)  The Court adopted the 2018 R&R.  (Mem. and Order, Docket Entry No. 45.)

On June 21, 2018, Plaintiff filed an Amended Complaint, (Am. Compl.),[5] and Defendants filed Answers, (Lyons Answer, Docket Entry No. 53; Bogle Answer, Docket Entry No. 54). After evidentiary hearings on the question of subject matter jurisdiction on March 21 and April 3, 2019, (*see* Lever Tr.; Lyons Tr.), by report and recommendation dated September 12, 2019, Judge Bulsara determined that both Plaintiff and Lyons were domiciled in New York when the Complaint was filed and therefore the parties are not completely diverse. (R&R 16.) Judge Bulsara therefore recommended that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction. (*Id.* at 17.) Plaintiff timely filed objections to the R&R. (Pl.'s Obj.)

### b. Factual background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of deciding Defendants' motions and assumes the parties' familiarity with the facts set forth in the prior opinions. *See Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857, at *1 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (Feb. 26, 2018). The Court provides only a summary of the relevant facts.

### i. September 2015 police report and court appearances

Plaintiff alleges that on September 8, 2015, Lyons made a false report to Newark, New Jersey, police officers "that [Plaintiff] had threatened to harm her and had posted a story on social media [about] her."[6] (Am. Compl. 4.) The report caused an order of protection to be entered against Plaintiff and led to him standing trial for making terroristic threats on September

---

[5] The Amended Complaint alleges that Plaintiff is a citizen of New York and that Lyons and Bogle are both citizens of New Jersey. (Am. Compl. 1–2.) Plaintiff seeks $350,000 "from both [D]efendants" and punitive damages to be determined by the Court. (*Id.* at 5.)

[6] Because the Amended Complaint and its attachments are not consecutively paginated, the Court refers to the ECF pagination.

14, 2015, in Essex County, New Jersey Superior Court (the "Essex County proceeding"). (*Id.*) At that court appearance, Lyons "produce[d] pictures of her beat up with bruises and a black eye and scratches." (*Id.*) She also submitted those photographs in a proceeding in Kings County Family Court. (*Id.*) Plaintiff contends that text messages between Lyons and Bogle revealed that they had colluded to cause those injuries and blame Plaintiff. (*Id.*) At the Essex County proceeding, Lyons caused Plaintiff to be served with a complaint that "intentionally defamed" him by stating that he had been abusing Lyons for years. (*Id.* at 5.) Lyons obtained an order of protection that prevented Plaintiff from obtaining work as a collection agent with New York City Transit in April of 2016 because he was ineligible to obtain a handgun license. (*Id.*)

Plaintiff further alleges that on July 17, 2016, Lyons made a false report to the 78th Precinct in Brooklyn, New York, that Plaintiff was molesting his child and watching child pornography. (*Id.* at 3.) Lyons' report caused Plaintiff emotional distress and caused him to be imprisoned in a locked room for several hours. (*Id.*) On the same day, Lyons "defamed [Plaintiff] by making false statements to the Superior Court of New Jersey, stating [Plaintiff] was under [f]ederal [i]nvestigation," and submitted to the court pictures of child pornography, which Lyons stated were obtained from Plaintiff's computer. (*Id.* at 4.) Lyons "went to the state of New Jersey and made the same complaint" on July 18, 2016, causing Plaintiff to lose custody of his child. (*Id.* at 3.) Plaintiff contends that on August 31, 2016, the Attorney General of Essex County submitted a report to the New Jersey state court concluding that the child pornography submitted by Lyons came from Lyons' friend, not Plaintiff's computer. (*Id.* at 4.) In addition, Lyons posted "on social media" on an unstated date that Plaintiff had abused her and that she had won a domestic violence case against him. (*Id.* at 5.) Plaintiff alleges that these statements are intentionally false and defamatory. (*Id.*)

## ii.  Plaintiff's allegations concerning Lyons' domicile

Plaintiff alleges that Lyons was domiciled in New Jersey when the Complaint was filed and argues that the Court therefore has subject matter jurisdiction.[7]  (Am. Compl. 2–3; Deed to 121 Ward Street, Orange, New Jersey 07050 granted to Shawn Landrum,[8] at 8–13, annexed to Am. Compl. as Ex. A, Docket Entry No. 51.)  In support, Plaintiff alleges that Lyons has misrepresented her address in prior court appearances because property records reflect that her purported address — 119 Ward Street, Orange, New Jersey, 07050 — does not exist, and is instead "a dual property of 121 [W]ard Street."  (Am. Compl. 2.)  Plaintiff contends that Lyons testified on August 27, 2014, in Kings County Family Court "that she abandon[ed] New York as her domicile and made the state of New Jersey her new home," and also testified on July 1, 2016, before that same court that she and her child reside in New Jersey.[9]  (Id.)  In addition, Plaintiff contends that Lyons gave her address as 119 Ward Street in each instance.  (Id.)  Plaintiff also asserts that Lyons' attorney stated in a December 6, 2016 hearing in Kings County family court that Lyons lives in New Jersey and requested that proceedings be transferred there.[10]  (Id.)

---

[7]  He also alleges that Bogle is domiciled in New Jersey, (Am. Compl. 2), which is not disputed.

[8]  Shawn Landrum is one of the landlords of the property in Orange, New Jersey.  (Lever Tr. 32.)  Plaintiff asserts that Landrum "just made up" the 119 Ward Street address and that property records establish that the proper addresses for the property are 121A and 121B Ward Street.  (Id. at 31–32.)

[9]  (Tr. of Hr'g dated Mar. 13, 2013, at 40–47, annexed to Am. Compl. as Ex. D, Docket Entry No. 51; Tr. of Hr'g dated Aug. 27, 2014, at 4, 36–37, annexed to Am. Compl. as Ex. E, Docket Entry No. 51-1; Tr. of Hr'g dated July 1, 2016, at 72, annexed to Am. Compl. as Ex. F, Docket Entry No. 51-1.)

[10]  In a December 6, 2016, hearing before the New York Supreme Court, Kings County, the court noted that a New Jersey court was also hearing a dispute between Plaintiff and Lyons "on the abuse docket" and that the parties' child resided in New Jersey.  (Tr. of Hr'g dated Dec.

In further support of his argument that Lyons is a New Jersey domiciliary, Plaintiff relies on the addresses on Lyons' bank and cable television accounts, tax filings in which Lyons "claim[ed] that she d[id] not maintain any living quarters in New York," and copies of pay stubs with an Orange, New Jersey, address that were certified by the Kings County court.[11]  Finally, Plaintiff notes that police officers in Orange, New Jersey, responded to a report at Plaintiff's New Jersey address on August 16, 2016, and found her at home.[12]

### iii.  Hearing testimony

Judge Bulsara heard testimony from Plaintiff and Lyons on the issue of Lyons' domicile. Plaintiff testified that he believes that Lyons is a citizen of New Jersey because of (1) statements she made in other court proceedings, transcripts of which he has submitted to the Court; (2) her New York driver's license being issued to a United Parcel Service mailbox address where she had never lived; (3) Lyons' inconsistent statements about where she lived; (4) her January 19, 2013 voter registration in New Jersey;[13] and (5) a lawsuit filed against her in New Jersey by her

---

6, 2016, at 4–6, annexed to Am. Compl. as Ex. G, Docket Entry No. 51-2.)  During a March 13, 2013 hearing in the same case, the parties discussed whether the custody exchange of Plaintiff's and Lyons' child, not the legal proceedings, should be moved from New York to New Jersey. (Tr. of Hr'g dated Mar. 13, 2013, at 41–47.)

[11]  (Am. Compl. 3; Bills from CreditOne Bank and DirecTV, at 10–11, annexed to Am. Compl. as Ex. H, Docket Entry No. 51-2; 2015 Federal and Nonresident and Part-Year Resident State Tax Returns of Lyons, at 13–34, annexed to Am. Compl. as Ex. I, Docket Entry No. 51-2; Paystubs of Christina Lyons for Pay Periods Ending Aug. 31, 2015, Mar. 31, 2016, Apr. 15, 2016, and June 30, 2016, at 36–40, annexed to Am. Compl. as Ex. J, Docket Entry No. 51-2.)

[12]  (Am. Compl. 3; Dep't of Children and Families Investigation Summ. 42–55, annexed to Am. Compl. as Ex. K, Docket Entry No. 51-2.)

[13]  Plaintiff noted that Lyons was registered to vote in two states, and Judge Bulsara suggested that "voter rolls are notoriously incorrect" because they are not updated when people move.  (Lever Tr. 30:21–31:3.)  Plaintiff added that "[w]hen [he] went down to the Board of Elections in New York, they told [him] that [Lyons] took her name off New York State voting

landlord on July 20, 2018.  (*Id.* at 10–11, 17–36.)  Plaintiff testified that Lyons first lived in

Staten Island, then lived with Plaintiff in Brooklyn.  He also testified that in May of 2009, while

living with Lyons in Brooklyn, Plaintiff obtained an apartment in Jersey City to ease her

commute, (Lever Tr. 5:5–6:13), stopped living with Plaintiff around the end of June of 2009, and

continued to live in Jersey City until approximately 2011.  (*Id.* at 6:20–25.)  Lyons then moved

to Irvington, New Jersey, and a year later, to Orange, New Jersey.  (*Id.* at 7:2–7.)  Plaintiff also

testified that he knew where Lyons lived because they shared custody of their daughter, who at

the time of the hearing lived with Lyons' mother in Staten Island.  (*Id.* at 7:10–8:7.)  Between

2010 and 2016, Lyons' mother lived in Newark, New Jersey.  (*Id.* at 9:3–25.)

    Lyons testified that, beginning at "the end of 2012" and ending approximately five years

later, she resided at a Staten Island address and "would just go back and forth" between that

address and her mother's residence at 119 Ward Street.  (Lyons Tr. 4:13–5:1.)  "[A]lmost a year"

before the hearing, she moved from that Staten Island address to another New York address.[14]

(*Id.* at 2:23–4:16.)  She has possessed a New York driver's license ever since she "got [her]

license . . . [fifteen], almost [sixteen] years ago."  (*Id.* at 5:4–13.)  She never considered herself a

resident of New Jersey, but used her mother's New Jersey address as her mailing address until

2018 because Plaintiff was and is "stalking [her]" and she did not feel comfortable disclosing her

---

and she just recently put it back on in June of last year."  (*Id.* at 33:2–5.)  Plaintiff submitted
Lyons' voter registration records, which showed that she registered to vote in New York in 2008
and 2017 but registered in New Jersey in the interim and is still registered there.  (New Jersey
Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl.
Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67; New York Voter
Registration Records, at 88–91, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as
Ex. I, Docket Entry No. 67.)  There were no records of her having voted in New Jersey.  (New
Jersey Voter Records.)

    [14] Lyons provided both addresses to the Court but the information has been redacted
from the public record.  (Lyons Tr. 2:22–5:2.)

residence.  (*Id.* at 5:14–6:8.)  Lyons maintained her mother's apartment in 2016 and 2017 while

her mother relocated to Virginia for work.  (*Id.* at 7:4–12.)  She has never voted in New Jersey,

but voted in New York "just this past election" and in 2008, and did not vote anywhere during

the intervening years.  (*Id.* at 7:15–8:13.)  Her car has been registered in her name in New York

since 2008 and prior to 2008 was registered in her mother's name.  (*Id.* at 8:14–23.)

Judge Bulsara questioned why Lyons had provided a New Jersey address during court

proceedings in New Jersey.  (*Id.* at 9:6–8.)  Lyons testified that custody proceedings had all

occurred in New York, and that "[a]s far as any proceedings in New Jersey, that has been [child

services]" proceedings concerning her daughter, who attended school in New Jersey using

Lyons' mother's address.  (*Id.* at 9:9–10:24.)  She further explained that the state was "already

familiar with [her] daughter," and as a result, Lyons believed that "when it came to any dealings

with the state," New Jersey was the better option.  (*Id.* at 9:15–19.)  Lyons also testified that in

June of 2018, Plaintiff "filed court papers in New Jersey to take custody of [their] daughter,"

Lyons proved that she was a New York resident, and "the case was then relinquished over to

New York."[15]  (*Id.* at 11:12–20.)

After the hearings, the parties submitted additional evidence, including 2018 records

from family court proceedings, (New Jersey Voter Registration Records ("New Jersey Voter

Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C,

Docket Entry No. 67), which Judge Bulsara considered.  Lyons told the Court about a similar

lawsuit Plaintiff filed in New York state court.  (Letter dated May 13, 2019, at 4, Docket Entry

No. 71.)  In response to an order from Judge Bulsara, (*see* Order dated June 3, 2019), Plaintiff

---

[15]  Lyons did not testify about the landlord's action against her in New Jersey or about
her alleged use of a post office box as an address.

assured the Court that he wanted to move forward with the federal case. (Letter dated June 24, 2019, Docket Entry No. 72).

   **c.  The R&R**

   Judge Bulsara recommended that the Court dismiss the case for lack of diversity subject matter jurisdiction because Lyons and Plaintiff were domiciled in New York at the time Plaintiff filed the Complaint. (R&R.) As an initial matter, Judge Bulsara noted that Plaintiff had the burden of demonstrating complete diversity, and that "[m]uch of the evidence submitted — particularly from [Plaintiff] — is repetitive and duplicative of the evidence previously submitted," which had been insufficient then to establish diversity jurisdiction. (*Id.* at 2, 5, 10–11.) He found that because Lyons had once been a New York domiciliary, Plaintiff needed to show that Lyons intended to change her citizenship. (*Id.* at 6.)

   In evaluating the testimony, Judge Bulsara noted that Lyons' ties to the 119 Ward Street address, which was her mother's home, were "beyond dispute" but "not dispositive of [her] citizenship." (*Id.* at 5–6.) He found the property ownership records for 121 Ward Street that were submitted by Plaintiff to be "of little use," and, if anything, undermined Plaintiff's case because he asserted Lyons' address did not exist, suggesting that there was no record of her owning property in New Jersey and "mak[ing] it less likely that Lyons ever intended to reside there on a permanent basis." (*Id.* at 6.) As to the tax returns, credit card statements, and other documents all listing Lyons' address as 119 Ward Street, Judge Bulsara found them to be of "little consequence" because the Court had considered them in the prior report and recommendation and concluded that those documents "indicate[d] that the address is a temporary, periodic second residence of . . . Lyons, not her primary residence or her domicile." (*Id.* at 7–9.) He further determined that the documents Plaintiff submitted after the evidentiary

hearings, including filings from family court proceedings in 2018, were of "little value" because they postdated the filing of the Complaint and were "filled with contradictory evidence, much of which is repetitive of facts previously submitted or is of little to no assistance in establishing the parties' respective domiciles." (*Id.* at 9–10.)  He determined that some of the documents Plaintiff provided supported the conclusion that Lyons had ties to New York: she had registered to vote in 2017 with a New York address, has a New York driver's license, and had sought medical care for her daughter in Staten Island in 2016 and 2017. (*Id.* at 10 n.5.)

Judge Bulsara determined that discussions of residence in state court proceedings involving Plaintiff and Lyons mainly concerned their daughter's residence, which was in New Jersey. (*Id.* at 7.)  Judge Bulsara found that the child's residence was less probative of Lyons' domicile than a child's residence would usually be because the child lived with her grandmother in New Jersey, was born in New York, and sometimes lived with her mother in New York. (*Id.* at 6–7.)  In addition, filings from the 2018 proceedings in family court postdated the filing of this Complaint and were repetitive or otherwise unhelpful. (*Id.* at 9.)  Judge Bulsara credited Lyons' testimony that she did not intend to move permanently to New Jersey and that her ties to that state "were all based on residing with her mother." (*Id.* at 14–16.)  Lyons' mother no longer lived in New Jersey, and Lyons no longer maintains ties to the state, suggesting that she did not intend to permanently change her domicile in 2016. (*Id.* at 15–16.)  Given this evidence, Judge Bulsara concluded that Plaintiff had not met his burden of showing that Lyons changed her domicile from New York to New Jersey. (*Id.* at 11, 17.)

Judge Bulsara explained that the Court lacked subject matter jurisdiction over the entire action, because a defect in diversity (unlike a defect in amount in controversy) was an "action-specific" defect that required dismissal of the entire case. (*Id.* at 16–17 (citing *Abu Dhabi Com.*

10

*Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 162 (S.D.N.Y. 2013)).)  Therefore, the case could not proceed against Bogle, even though she "does not dispute she is a citizen of New Jersey" and the damages sought against her satisfied the amount-in-controversy requirement. (*Id.* at 16.)

### d.   Objections to the R&R

Plaintiff objects to the R&R,[16] arguing that: (1) Judge Bulsara erred in finding that the 119 Ward Street address was the home of Lyons' mother based only on Lyons' testimony and "without any documentation to prove this as fact"; (2) Lyons told the court on May 14, 2018, that she has no knowledge of her mother or her mother's landlords, who evicted her mother from 119 Ward Street in 2018; (3) Judge Bulsara erred in accepting Lyons' stated New York address as accurate when she had given a different, untruthful address on her driver's license; (4) Lyons bought a house in New Jersey in 2018 and has since used that address; (5) Lyons has been registered to vote in New Jersey since 2013 and pays taxes as a New York nonresident, and Lyons' pay stubs show two addresses, one of which is "falsified"; (6) Lyons told the Court that her address is confidential, but freely gave her New Jersey address in other court proceedings; (7) The New York Administration for Children's Services "found [Lyons] does not live nor

---

[16]  Plaintiff has submitted additional papers with his objections.  Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling.  Fed. R. Civ. P. 72(b); *see also Kazolias v. IBEW LU 363*, 806 F.3d 45, 54 (2d Cir. 2015) ("[T]he governing statute . . . expressly provides that the district court [in reviewing objections to an R&R] 'may also receive further evidence.'" (quoting 28 U.S.C. § 636(b)(1))).  In light of Plaintiff's *pro se* status, the Court considers the evidence submitted with his objections, which appears to be largely duplicative of previous submissions.  *See Augustin v. Cap. One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling).

reside part time at any location" in New York;[17] (8) Plaintiff is suing Lyons' mother, but the

courts refuse to accept service at "the address"; and (9) in 2018, a court-appointed attorney for

Plaintiff and Lyons' child stated that Lyons was "going state to state saying she lives in the other

jurisdiction."[18] (Pl.'s Obj. 1–4.) Plaintiff requests a further hearing in which Lyons' mother and

her landlords will testify as to Lyons' permanent address, and in which he will "get statements

from [the New York address] where she claims to have lived." (*Id.* at 4.)

## II. Discussion

### a. Standard of review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and

recommendation, the district court reviews *de novo* the parts of the report and recommendation

to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015). The district court may adopt those portions of the recommended ruling to which no

---

[17] In a report produced by New York child welfare officials in November of 2018, investigators found that they could not ascertain Lyons' address because she lived in New Jersey and was uncooperative. (Nov. 1, 2018 Ct. Ordered Investigation 71, annexed to Pl.'s Obj. as Ex. O, Docket Entry No. 75.)

[18] Plaintiff argues that Lyons contradicts herself by claiming that this Court lacks subject matter jurisdiction even as she brings counterclaims against Plaintiff in this Court. (Pl.'s Obj. 4.) Because subject matter jurisdiction is not waivable, Lyons did not waive defects in subject matter jurisdiction by asserting counterclaims in her answer. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). In addition, based on Judge Bulsara's credibility determinations favoring Lyons, Plaintiff contends that "[t]he [C]ourt seem[s] to have taken a bias stand against [him]." (Pl.'s Obj. 1.) To the extent Plaintiff is making a "bias or partiality motion," the Court denies the application because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)), and the finding that Lyons' testimony was credible does not reflect the sort of "deep-seated favoritism or antagonism" that would justify an exception to that rule, *id*.

12

timely objections have been made, provided no clear error is apparent from the face of the record.  *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

    **b.   Plaintiff has failed to show that in 2018 Lever was domiciled in New Jersey**

Plaintiff has not established by clear and convincing evidence that Lyons changed her domicile from New York to New Jersey.[19]

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented.  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000).  The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332.  Under the diversity jurisdiction statute, 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy

---

[19]   Plaintiff does not object to the R&R's findings that Lyons was domiciled in New York at birth and that the claims against Bogle cannot be severed from the rest of the action.  The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to 28 U.S.C. § 636(b)(1).

exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants." (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction.").

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).  "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another."  *New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) (quoting *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009)); *see also Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017) ("Although the individual plaintiff and the individual defendants are alleged to be residents of certain States, such an allegation is insufficient to plead citizenship.").  Moreover, "one may have more than one residence in different parts of this country or the world, but a person may have only one domicile."  *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)).

"One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs."  *Linardos*, 157 F.3d at 948 (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).  A person changes their domicile only when they take up residence in a new domicile and intend to stay.  *Davis*, 691 F. App'x at 673.  To determine whether an individual intends to stay in a particular state and effects a change in domicile, courts must look to the

"totality of the evidence," considering, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; . . . payment of taxes; . . . whether a person owns or rents his place of residence; the nature of the residence (*i.e.*, how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 (alterations omitted) (quoting *Kennedy*, 633 F. Supp. 2d at 81). Whether a person intended to change his or her domicile from one state to another is a question of fact, and a "party alleging that there has been a change of domicile has the burden of proving the 'required intent . . . to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"[20]  *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (alterations omitted) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

The parties agree that Lyons resided, at least temporarily, at 119 Ward Street in New Jersey and used that address to receive mail, but Lyons' residence at that address does not establish that she was domiciled in New Jersey. *See New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." (quoting *Kennedy*, 633 F. Supp. 2d at 81)). Lyons' use of her mother's New Jersey address to receive mail, and her use of that address in court, does not contradict her testimony that at the time this lawsuit was filed, she divided her time between New Jersey and

---

[20]  The Second Circuit has clarified that "the factual questions that inform a determination as to federal jurisdiction need not be submitted to a jury and may be resolved by the [c]ourt." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42–43 (2d Cir. 2000) (first citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984); and then citing *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)).

New York and did not intend to remain in New Jersey permanently. Similarly, her paying taxes as a New York nonresident does not establish that she intended to remain outside New York permanently, although (as Judge Bulsara recognized) it does provide some support for that conclusion. *See Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property, bank accounts, [and] places of business or employment." (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991))); *Braten v. Kaplan*, No. 07-CV-8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (noting that where a person pays taxes is one of "a number of factors" relevant to the determination of that person's domicile), *aff'd*, 406 F. App'x 516 (2d Cir. 2011).

Moreover, Lyons' residence and actions in 2018, including her ties to a New Jersey address that Plaintiff describes in his objections, are not dispositive of where she was domiciled when the lawsuit was filed in 2016. *See Dukes ex rel. Dukes v. N.Y.C. Emps.' Ret. Sys.*, 581 F. App'x 81, 82 (2d Cir. 2017) (looking to domicile at the time the action was commenced); *Borderud v. Riverside Motorcars, LLC*, No. 18-CV-1291, 2020 WL 2494760, at *4 n.3 (D. Conn. May 13, 2020) ("Because diversity is determined at the time the [c]omplaint is filed, the [c]ourt will disregard evidence concerning events after [the plaintiff] filed his [c]omplaint." (citing *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019)); *Chappelle v. Beacon Commc'ns Corp.*, 863 F. Supp. 179, 182 n.3 (S.D.N.Y. 1994) ("Because the relevant period for determining [the defendant's] domicile is the time the action is commenced, which in this case is December [of] 1992, evidence which is probative of [the defendant's] domicile after that date is not discussed.").

Other factors support the conclusion that Lyons was domiciled in New York at the time

Plaintiff commenced this action.  Lyons kept her vehicle registered in New York, voted in New York when she voted (although she was also registered to vote in New Jersey in the years surrounding the filing of the Complaint), and kept a New York driver's license, even though the address on that license was in dispute.  *See Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008) (holding that factors supported the conclusion that the plaintiff was domiciled in New York and not Florida, including that "she was not registered to vote in Florida and had a New York driver's license and all her automobiles registered in New York"); *Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *2 (S.D.N.Y. Sept. 30, 2003) (holding that, where the plaintiff intended to maintain residences in New York and his presumptive Georgia domicile in the long term, "that [the] plaintiff resides in New York, has adult children residing in New York, receives medical care in New York, receives his bills in New York, and maintains a pro bono office in New York[ ]merely show that, for the past three years, New York has been [the] plaintiff's principal place of residence" and did not establish New York as his domicile).  In addition, Lyons lived with her mother rather than renting her own residence in New Jersey, and no evidence in the record suggests that Lyons planned to live there indefinitely to support her mother.  *See Kennedy*, 633 F. Supp. 2d at 81 (holding "whether a person owns or rents his place of residence" is relevant to domicile); *cf. Dukes ex rel. Dukes v. NYCERS*, 2014 WL 583235, *2 (E.D.N.Y. Feb. 12, 2014) (holding that where plaintiff "expressed the intent to remain in Staten Island indefinitely to continue caring for her mother and working in New York City" that fact supported the conclusion she was domiciled in New York), *aff'd*, *Dukes ex rel. Dukes*, 581 F. App'x at 81.  Given the conflicting evidence, Plaintiff has not succeeded in establishing that Lyons changed her domicile from New York, acquired at her birth, to New Jersey.  *See Gold v. Katz*, No. 90-CV-7726, 1991 WL 237807, at *3

17

(S.D.N.Y. Nov. 4, 1991) ("There is a presumption favoring a former domicile over a newly acquired residence." (first citing *Farrell v. Ashton*, No. 89-CV-6706, 1991 WL 29261, at *5 (S.D.N.Y. Feb. 28, 1991); and then citing 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3612, at 535 (1984))).

Finally, many of Plaintiff's objections are to Lyons' credibility. Judge Bulsara observed Plaintiff and Lyons at the evidentiary hearing and found Lyons' testimony — including that the 119 Ward Street address was primarily her mother's apartment — to be credible. (R&R 12, 14–15.) Plaintiff has not presented sufficient reason to set aside this credibility determination. *See Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999))); *Imbruce v. Buhl*, No. 15-CV-554, 2016 WL 2733097, at *2 (D. Conn. May 10, 2016) (evaluating domicile "from the record and on the basis of the credible testimony of [witnesses] at the evidentiary hearing").

Plaintiff has had a full opportunity to present evidence in support of his arguments that Lyons was domiciled in New Jersey at the commencement of this action and has failed to do so. The Court declines to grant Plaintiff further leave to amend the Complaint a second time.

**III.   Conclusion**

   For the foregoing reasons, the Court adopts the R&R and dismisses the action without

prejudice for lack of subject matter jurisdiction.  The Clerk of Court is directed to mail copies of

this Memorandum and Order to the parties at their addresses of record and to close the case.

Dated: January 27, 2021
   Brooklyn, New York

           SO ORDERED:


           _____s/ MKB_____
           MARGO K. BRODIE
           United States District Judge